## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

KELVIN J. COCHRAN,              §
                               §
    Plaintiff,          §
                               §        CASE NO.
v.                             §
                               §        1:15-cv-00477-LMM
CITY OF ATLANTA, GEORGIA;       §
and MAYOR KASIM REED, in his    §
individual capacity.            §
                               §
    Defendants.         §

## CITY DEFENDANTS' MOTION TO DISMISS AND INCORPORATED BRIEF IN SUPPORT

Defendants City of Atlanta, Georgia and Mayor Kasim Reed ("City Defendants") hereby file this Motion to Dismiss pursuant to F.R.C.P. 12(b)(1) and 12(b)(6), along with an incorporated Brief in Support of Motion to Dismiss, and show the Court as follows:

## I.     STATEMENT OF THE CASE

Plaintiff filed his Complaint (Doc. 1) on February 18, 2015, and both Defendants were served on March 4, 2015. Defendants timely file this Rule 12 Motion to Dismiss in lieu of Answer on March 25, 2015.

Plaintiff asserts the following causes of action under 42 U.S.C. § 1983:

1.     First Amendment Right to Freedom of Speech: Retaliation;

2.      First Amendment Right to Freedom of Speech: Viewpoint Discrimination, Overbreadth, Prior Restraint and Unbridled Discretion, and Unconstitutional Conditions;

3.      First Amendment Right to the Free Exercise of Religion and No Religious Tests Clause of Art. VI, ¶ 3 of the Constitution;

4.      First Amendment Right to Freedom of Association;

5.      First Amendment Right to Avoid Religious Hostility: Establishment;

6.      Fourteenth Amendment Right to Equal Protection of the Laws;

7.      Fourteenth Amendment Right to Due Process: Vagueness;

8.      Fourteenth Amendment Right to Due Process: Liberty Interest; and

9.      Fourteenth Amendment Right to Due Process:  Procedure.

## II.      STANDARD OF REVIEW

A motion to dismiss for failure to state a claim is properly granted when the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[1]  "Although the facts alleged in a complaint are assumed to be true for purposes of a motion to dismiss, conclusory allegations and legal conclusions are entitled to no deference in the court's

---

[1] *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

consideration of such a motion."[2]  Moreover, dismissal is proper if the allegations

indicate the existence of an affirmative defense or other bar to relief.[3]  To survive a

motion to dismiss, a complaint need not contain "detailed factual allegations," but

"must give the defendant fair notice of what the…claim is and the grounds upon

which it rests."[4]  A complaint is required to contain facts sufficient to state a claim

that is plausible on its face.[5]  The Court may consider documents attached as exhibits

to the pleadings, documents referred to in the complaint and central to the plaintiff's

claim, matters of public record, and documents of which the Court may take judicial

notice.[6]

## III.    RELEVANT ALLEGATIONS ASSERTED IN THE COMPLAINT

Plaintiff makes the following allegations in his Complaint (Doc. 1) which

support Defendants' Motion to Dismiss.

---

[2] *Eller v. Ben Tzer Yul*, 2006 WL 3734162 *2 (N.D. Ga.) (citing *South Fla. Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 409 n.10 (11th Cir. 1996) ("conclusory allegations and unwarranted deductions are not admitted as true in a motion to dismiss") (internal citation omitted)).

[3] *Quiller v. Barclays American/Credit, Inc*., 727 F.2d 1067, 1069 (11th Cir. 1984), *adhered to en banc*, 764 F.2d 1400 (11th Cir. 1985) ("[A] complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint.") (citations omitted)).

[4] *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1964 (2007).

[5] *Id.*

[6] *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1280 (11th Cir. 1999) (addressing specifically matters of public record). *See also R.G. Fin Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006); *Park Univ. Enters., Inc. v. American Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006);  *Sira v. Morton*, 380 F.3d 57 (2nd Cir. 2004).

1.   From 2010 through January 6, 2015, Plaintiff was the Fire Chief of the Atlanta Fire Rescue Department ("AFRD").  (Doc. 1, ¶¶ 58-59)

2.   In "late 2013", Plaintiff published a book entitled *Who Told You That You Were Naked?: Overcoming the Stronghold of Condemnation* that began as a unit of Plaintiff's men's Bible study at his church and that was "written primarily for men, and is intended to help them fulfill God's purpose for their life."  (Doc. 1, ¶¶ 83-89, 91-93)

3.   "The book's primary goal is to guide men on how to overcome the stronghold of condemnation, to walk in the fullness of salvation, and to live a faith-filled, virtuous life."  (Doc. 1, ¶ 94)

4.   "The book teaches that pursing [*sic*] sex outside the confines of marriage between a man and woman—including fornication, homosexual acts, and all other types of non-marital sex—is contrary to God's will."  (Doc. 1, ¶ 100)

5.   Plaintiff admits that he gave copies of his book to 20-22 City of Atlanta employees, 16-18 of whom were his subordinates within the AFRD.  (Doc. 1, ¶¶ 117, 123, 126-134)

6.   On November 20, 2014, Plaintiff allegedly learned that an "AFRD member apparently showed Councilmember Wan the few passages of the book concerning sexual morality and told Councilmember Wan that these

passages were opposed to his beliefs on the subject."  (Doc. 1, ¶¶ 138-141)

7. The AFRD member's complaint to Councilmember Wan allegedly precipitated discussion of the matter among the City's upper management including the Commissioner of Human Resources, Chief Operating Officer, City Attorney, and the Mayor's Deputy Chief of Staff and Senior Advisor.  (Doc. 1, ¶¶ 142-143)

8. On November 24, 2014, "the City suspended Cochran for 30 days without pay."  (Doc. 1, ¶ 145)

9. The City of Atlanta Code of Ordinances Sec. 2-820(d) provides that department heads, such as Plaintiff was, "shall not engage in any private employment or render any services for private interests for remuneration[7], regardless of whether such employment or service is compatible with or adverse to the proper discharge of the official duties of such employee… [without] obtaining prior written approval from the board of ethics in accordance with this paragraph."  (Doc. 1, ¶ 171)

---

[7] Although the Plaintiff does not mention in his Complaint that his book was made available for purchase, the Court may take judicial notice of the fact that Plaintiff's book is commercially sold on internet retail site Amazon.com.  (F.R.E. Rule 201(b): "The court may judicially notice a fact that is not subject to reasonable dispute because it:  (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.")  *See* http://www.amazon.com/Who-Told-That-Were-Naked/dp/0985496851.

10. Plaintiff does not contend that he obtained the requisite prior written approval from the Board of Ethics in accordance with City of Atlanta Code of Ordinances Sec. 2-820(d). (Doc. 1, *see* ¶¶ 173-175)

11. Plaintiff was given the option of resigning in lieu of termination on January 6, 2015. (Doc. 1, ¶¶ 169, 195)

## IV. ARGUMENT AND CITATIONS TO AUTHORITY

### A. PLAINTIFF FAILS TO SET FORTH A CLAIM FOR COUNT ONE OF HIS COMPLAINT, FIRST AMENDMENT RIGHT TO FREEDOM OF SPEECH: RETALIATION (42 U.S.C. §1983).

It is well established in this circuit that, for a public employee to establish a prima facie case of First Amendment retaliation, [he] must show: 1) that the speech can be fairly characterized as relating to a matter of public concern, 2) that [his] interests as a citizen outweigh the interests of the State as an employer, and 3) that the speech played a substantial or motivating role in the government's decision to take an adverse employment action. If the plaintiff can establish these elements, the defendant is given the opportunity to rebut the presumption of retaliation by proving that it would have made the same decision even if the speech at issue had never taken place.[8]

"The first two steps are questions of law; the final two steps are 'questions of fact designed to determine whether the alleged adverse employment action was in retaliation for the protected speech.'"[9] For purposes of this Motion to Dismiss,

---

[8] *Akins v. Fulton County, Ga.*, 420 F.3d 1293, 1303 (11th Cir. 2005) (internal citations omitted).

[9] *Cook v. Gwinnett County School Dist.*, 414 F.3d 1313, 1318, 199 Ed. Law Rep. 637 (11th Cir. 2005) (quoting *Anderson v. Burke County, Ga.*, 239 F.3d 1216, 1219–20 (11th Cir. 2001)).

Defendants will address only the first two elements of Plaintiff's prima facie case which are questions of law.

The first prong of a prima facie case for a freedom of speech retaliation claim is establishing that the speech was related to a matter of public concern. "For speech to be protected as speech on a matter of public concern, 'it must relate to a matter of political, social, or other concern to the community.'"[10] In the instant case, Plaintiff published a book that began as a Bible study for his men's church group and evolved into a book "primarily for [Christian] men to help them fulfill God's purpose for their life."[11] Plaintiff subsequently gave copies of his book to 20-22 City of Atlanta employees, 16-18 of whom were his subordinates within the AFRD.[12] Assuming arguendo that the content of Plaintiff's book was the reason for his termination, Plaintiff's own description of the book shows a narrow target audience and limited purpose that constitute the type of speech that "cannot be fairly considered as relating to any matter of political, social, or other concern to the community, [therefore,] government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment."[13]

---

[10] *Akins, supra*, 420 F.3d 1293, 1303-1304 (11th Cir. 2005) (quoting *Watkins v. Bowden*, 105 F.3d 1344, 1353 (11th Cir. 1997)).

[11] Doc. 1, ¶¶ 83-89, 91-93.

[12] Doc. 1, ¶¶ 117, 123, 126-134.

[13] *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983); *see also Anderson, supra*, 239 F.3d at 1221.

Moreover, Plaintiff's book is also not the type of speech on a matter of public concern that is uniquely informed by his knowledge as a government employee, thus rendering his speech of particular value to the general public which may not otherwise have access to the benefit of that information.[14]

To satisfy the second prong of his prima facie case for a First Amendment right to freedom of speech retaliation claim, Plaintiff must show that his interest as a citizen in publishing a book of guidance for Christian men in the workplace and disseminating said book in the workplace where he was the Fire Chief of the AFRD[15] outweighed the City's interest as a governmental employer.[16]

Plaintiff's first hurdle for this prong is that "the government as employer indeed has far broader powers than does the government as sovereign. …To begin with, even many of the most fundamental maxims of our First Amendment jurisprudence cannot reasonably be applied to speech by government employees."[17]

> [T]he extra power the government has in this area comes from the nature of the government's mission as employer. Government agencies are charged by law with doing particular tasks. Agencies hire employees to help do those tasks as effectively and efficiently as possible. When someone who is paid a salary so that [he] will contribute to an agency's effective operation begins to do or say things that detract from the agency's effective operation, the government employer must

---

[14] *See Pickering v. Board of Ed. Of Township High School Dist. 205, Will Cty.*, 391 U.S. 563, 572, 88 S.Ct. 1731, 1736, 20 L.Ed.2d 811 (1968).

[15] Doc. 1, ¶¶ 58-59, 83-89, 91-94, 100, 117, 123, 126-134.

[16] *Akins, supra,* at 1303.

[17] *Waters v. Churchill*, 511 U.S. 661, 671-672, 114 S.Ct. 1878, 1886, 128 L.Ed.2d 686 (1994) (citations omitted).

have some power to restrain [him].[18]

Plaintiff's second hurdle to show a balancing of interests in his favor is that paramilitary organizations such as fire departments are afforded even more deference than other governmental employers in restricting speech to promote efficiency. In *Anderson v. Burke County, Ga.*, 239 F.3d 1216 (11th Cir. 2001), the Eleventh Circuit Court of Appeals recognized a governmental employer's "legitimate interest in ensuring that the Plaintiff 'maintain[s] public confidence in the ability of [the Burke County fire and rescue services] to carry out its public safety mission'" as a "compelling and legitimate government interest."[19] "In addition, **a paramilitary organization, such as a fire department…has a 'need to secure discipline, mutual respect, trust and particular efficiency among the ranks due to its status as a quasi-military entity different from other public employers.'"**[20]

Plaintiff in the instant case was the Fire Chief of the AFRD when he admittedly published and distributed in the workplace a book containing moral judgments about certain groups of people that caused at least one AFRD member

---

[18] *Id.* at 674-675, 1887-1888.

[19] *Id.* at 1221-1222 (citing *Johnson v. Clifton*, 74 F.3d 1087, 1092 (11th Cir. 1996) and *Connick v. Myers,* 103 S.Ct. 1684, 1692 (1983).

[20] *Anderson, supra,* at 1222 (internal citations omitted) (emphasis added). *See also Gresham v. City of Atlanta*, 542 Fed. Appx. 817 (11th Cir. 2013) (per curiam) ("When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate." (citing *Connick, supra,* at 151-52)).

enough concern to complain to a City Councilmember.[21]  Because the City of Atlanta

is a governmental employer with heightened powers to restrict speech as necessary

to ensure efficient delivery of mandated services, and in the context of Plaintiff being

the top official in the AFRD which is a paramilitary organization that requires strict

discipline and trust to maintain particular efficiency, Plaintiff cannot show that his

interest in publishing and disseminating a controversial book in the workplace

outweighs Defendants' interests as a governmental employer.

### B. PLAINTIFF FAILS TO SET FORTH A CLAIM FOR, AND LACKS STANDING TO ASSERT, COUNT TWO OF HIS COMPLAINT, FIRST AMENDMENT RIGHT TO FREEDOM OF SPEECH: VIEWPOINT DISCRIMINATION, OVERBREADTH, PRIOR RESTRAINT AND UNBRIDLED DISCRETION (42 U.S.C. §1983).

For the reasons discussed above in Section IV. A., *supra*, Plaintiff fails to set

forth a claim for Count Two of his Complaint.  Even if he could establish the

elements of this claim, however, Plaintiff in the instant case lacks standing to bring

a claim of viewpoint discrimination, overbreadth, prior restraint and unbridled

discretion.  Count Two of Plaintiff's Complaint is essentially a challenge to the

constitutionality of the City of Atlanta Code of Ordinances Sec. 2-820(d) requiring

department heads to obtain prior written approval from the Board of Ethics before

engaging in the provision of services for private interests for remuneration.  Plaintiff

does not allege that he sought or was denied such written approval.  Thus, Plaintiff

---

[21] Doc. 1, ¶¶ 58-59, 83-89, 91-93, 100, 117, 123, 126-134, 138-141.

does not allege facts sufficient to establish standing to bring Count Two of his

Complaint.

> The Constitution of the United States limits the subject matter jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. Art. III, § 2. "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." Standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." "In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims," and "the court is powerless to continue".[22]

"The overbreadth doctrine does not relieve a plaintiff of the burden to prove

constitutional standing, which requires that 'the plaintiff himself has suffered some

threatened or actual injury resulting from the putatively illegal action.'"[23]

"**A plaintiff who has established constitutional injury** under a provision of

a statute **as applied to his set of facts** may also bring a facial challenge, under the

overbreadth doctrine, to vindicate the rights of others not before the court under that

provision."[24]  Plaintiff in the instant case is not such an individual.  Plaintiff has

never alleged that he was denied permission to publish his book under City of

Atlanta Code of Ordinances Sec. 2-820(d), the ordinance that Plaintiff challenges as

being overly broad and constituting an impermissible prior restraint.  Thus, Plaintiff

---

[22] *CAMP Legal Defense Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1269 (11th Cir. 2006) (internal citations omitted).
[23] *Id.* at 1270 (quoting *Warth v. Seldin*, 422 U.S. 490, 499, 95 (1975)).
[24] *CAMP, supra*, at 1271 (emphasis added).

fails to plead facts requisite to establish standing by presenting an actual case or controversy and the Court lacks subject matter jurisdiction over Count Two of Plaintiff's Complaint.

### C. PLAINTIFF FAILS TO SET FORTH A CLAIM FOR COUNT THREE OF HIS COMPLAINT, FIRST AMENDMENT RIGHT TO THE FREE EXERCISE OF RELIGION AND NO RELIGIOUS TESTS CLAUSE OF ART. VI, ¶3 OF THE CONSTITUTION (42 U.S.C. §1983).

"To plead a valid free exercise [of religion] claim [in a public employment context], [a plaintiff] must allege that the government has impermissibly burdened one of his 'sincerely held religious beliefs.'"[25] Moreover, the Eleventh Circuit Court of Appeals found in *Watts, supra,* that "[a]pplying the teachings of *Twombly* and our decisions to the pleading issue in this case, the question [on a motion to dismiss amended complaint] is whether Watts has alleged enough facts to suggest, raise a reasonable expectation of, and render plausible the fact that he sincerely held the religious belief that got him fired."[26] "Applying the holding of *Thomas*, [a plaintiff to survive a motion to dismiss] must plead that he believes his religion compels him to take the actions that resulted in his termination."[27]

In the instant case, although Plaintiff states that his religious beliefs compel

---

[25] *Watts v. Florida Intern. University*, 495 F.3d 1289, 1294 (11th Cir. 2007) (quoting *Frazee v. Ill. Dep't of Employment Sec.*, 489 U.S. 829, 834, 109 S.Ct. 1514, 1517, 103 L.Ed.2d 914 (1989)).
[26] *Id.* at 1296.
[27] *Id.* at 1297.

him to honor God in all aspects of his work and to treat staff and community members equally[28], he does not allege that his religious beliefs compelled him to publish a book about his beliefs while actively serving as the Fire Chief and without obtaining prior written approval of the City of Atlanta Board of Ethics per City Code Sec. 2-820(d).  Plaintiff further fails to allege that his religious beliefs compelled him to distribute up to 22 copies of his book to various City of Atlanta employees, including approximately 18 who were Plaintiff's subordinates in AFRD, thus bringing the book to the attention of his employer when an AFRD employee complained to a Councilmember and leading to his termination approximately one year after his book was published.

### D. PLAINTIFF FAILS TO SET FORTH A CLAIM FOR COUNT FOUR OF HIS COMPLAINT, FIRST AMENDMENT RIGHT TO FREE ASSOCIATION (42 U.S.C. §1983).

In *McCabe v. Sharrett*, 12 F.3d 1558  (11th Cir. 1994), the Eleventh Circuit Court of Appeals found that an adverse action (i.e. a transfer out of the chief's office and demotion) against a police chief's executive secretary based solely on her choice to marry another police officer within the agency was not a violation of her First Amendment right to free association under any applicable test.

> Although there are good reasons to apply either the *Pickering* or the *Elrod–Branti* analysis to this case, we need not decide which of the three schemes described above applies, because appellees' transferring McCabe was justified under any of the legal standards discussed here.

---

[28] Doc. 1, ¶¶  71-73.

… Assuming arguendo that the district court properly determined the *Pickering* analysis to apply, we agree with the district court that the *Pickering* balance tips in favor of appellees. … [t]he Supreme Court has identified a number of factors for courts to consider when performing the balance: (1) whether the employee's exercising rights "impairs discipline by superiors or harmony among co-workers"; (2) whether the employee's exercising rights "has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary"; and (3) whether the employee's exercising rights "impedes the performance of the [employee's] duties or interferes with the regular operation of the enterprise." …

Even if…the *Elrod–Branti* analysis rather than the *Pickering* analysis should apply, the district court properly granted appellees summary judgment. The dispositive question under the *Elrod–Branti* analysis is whether the employer can demonstrate that forgoing associational rights "is an appropriate requirement for the effective performance of the public office involved"; in other words, the employer must demonstrate that the employee's exercise of associational rights would hinder the effective functioning of the employer's office.

Even if the proper legal standard … is general strict scrutiny analysis, appellees are still entitled to prevail. Strict scrutiny analysis requires the government to demonstrate that its challenged action was necessary to serve a compelling state interest. **The government's interest in the efficient and effective performance of government functions is compelling.**[29]

Here, Plaintiff's claims in Count Four of his Complaint would be due to be dismissed under the *Pickering* or *Elrod-Branti* tests for the reasons stated in Section IV.A. *supra.* Furthermore, Plaintiff's claims also fail under a strict scrutiny standard because "the Eleventh Circuit Court of Appeals recognized a governmental employer" has a "compelling and legitimate government interest" in maintaining the

---

[29] *McCabe, supra,* at 1569-1574 (internal citations omitted).

confidence of the public in a fire department's ability "to carry out its public safety mission".[30]  Plaintiff admits that, while he was Fire Chief, he published statements including judgments about sexual morality and distributed them to City of Atlanta employees and subordinates, and that his statements caused enough concern for one such subordinate to complain to a Councilmember.[31]  Assuming arguendo that the content of Plaintiff's book was the reason for his termination, Plaintiff's own allegations show that the Defendants had a compelling governmental interest in maintaining the public trust and efficient provision of fire department services such that Plaintiff's right to freedom of association was not violated.

### E. PLAINTIFF FAILS TO SET FORTH A CLAIM FOR COUNT FIVE OF HIS COMPLAINT, FIRST AMENDMENT RIGHT TO AVOID RELIGIOUS HOSTILITY: ESTABLISHMENT (42 U.S.C. §1983).

The Supreme Court "has explained that the purpose of the Establishment and Free Exercise Clauses of the First Amendment is 'to prevent, as far as possible, the intrusion of either [the church or the state] into the precincts of the other.'"[32]  To determine whether there has been a violation of the Establishment Clause, "[r]ather than mechanically invalidating all governmental conduct or statutes that confer

---

[30] *Anderson, supra,* 239 F.3d at 1221-1222 (citing *Johnson v. Clifton*, 74 F.3d 1087, 1092 (11th Cir. 1996) and *Connick v. Myers*, 103 S.Ct. 1684, 1692).
[31] Doc. 1, ¶¶ 1-2, 4-6.
[32] *Lynch v. Donnelly*, 465 U.S. 668, 104 S.Ct. 1355, 1358--1359 (1984) (quoting *Lemon v. Kurtzman*, 403 U.S. 602, 614, 91 S.Ct. 2105, 2112, 29 L.Ed.2d 745 (1971)).

benefits or give special recognition to religion in general or to one faith…the Court

has scrutinized challenged legislation or official conduct to determine whether, in

reality, it establishes a religion or religious faith, or tends to do so."[33]

> In the absence of precisely stated constitutional prohibitions, we must draw lines with reference to the three main evils against which the Establishment Clause was intended to afford protection: 'sponsorship, financial support, and active involvement of the sovereign in religious activity."

> Every analysis in this area must begin with consideration of the cumulative criteria developed by the Court over many years. Three such tests may be gleaned from our cases. First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster "an excessive government entanglement with religion."[34]

Plaintiff in the instant case fails to allege facts establishing that either

Defendants' actions or the City of Atlanta Code of Ordinances Sec. 2-820(d)

constitutes an intrusion by the state into the church or vice versa.  Furthermore, the

language of the City Code Sec. 2-820(d)[35] passes all three tests identified by the

---

[33] *Id.* at 1361-1362 (citing *Walz v. Tax Commission of City of New York*, 397 U.S. 664, 668-669, 90 S.Ct. 1409, 1411, 25 L.Ed.2d 697 (1970)).

[34] *Lemon v. Kurtzman*, 403 U.S. 602, 612-613, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971) (internal citations omitted).

[35] City of Atlanta Code of Ordinances Section 2-820 (d) states in pertinent part that "department heads…shall not engage in any private employment or render any services for private interests for remuneration, regardless of whether such employment or service is compatible with or adverse to the proper discharge of the official duties of such employee.  However, the employees named in this paragraph may engage in private employment or render services for private interests only upon

Supreme Court in *Lemon, supra.* First, the language of the ordinance has the secular legislative purpose of limiting outside employment for remuneration by high-level government employees. Second, the principal or primary effect of the Ordinance in requiring pre-approval by the ethics board for all such outside employment for remuneration neither advances nor inhibits religion. Third, the Ordinance, which does not mention religion or the nature of the proscribed outside employment at all, does not foster an excessive government entanglement with religion.

### F. PLAINTIFF FAILS TO SET FORTH A CLAIM FOR COUNT SIX OF HIS COMPLAINT, FOURTEENTH AMENDMENT RIGHT TO EQUAL PROTECTION OF THE LAWS (42 U.S.C. §1983).

"[T]here is a crucial difference, with respect to constitutional analysis, between the government exercising 'the power to regulate or license, as lawmaker,' and the government acting 'as proprietor, to manage [its] internal operation.'"[36] Furthermore, "[t]his distinction has been particularly clear in our review of state action in the context of public employment."[37] Although the class of one theory of equal protection violation has been recognized in the context of government regulation of private property, "[t]he close relationship between the employer and employee, and the varied needs and interests involved in the employment context,

---

obtaining prior written approval from the board of ethics in accordance with this paragraph." (*see* Doc 1, ¶ 171 for full text of this Ordinance)
[36] *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 598, 128 S.Ct. 2146 (2008).
[37] *Id.*

mean that considerations such as concerns over personality conflicts that would be unreasonable as grounds for 'arm's-length' government decisions (e.g., zoning, licensing) may well justify different treatment of a public employee."[38]

> Thus, the class-of-one theory of equal protection—which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review—is simply a poor fit in the public employment context. To treat employees differently is not to classify them in a way that raises equal protection concerns. Rather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship.[39]

Thus, Plaintiff in the instant case must show, as a threshold matter, a similarly situated comparator who was treated differently—i.e. the head of a paramilitary department of the City of Atlanta who failed to obtain written approval in compliance with City of Atlanta Code of Ordinances Sec. 2-820(d) before publishing and commercially selling a controversial book which he then disseminated to employees and subordinates, and which ultimately caused disturbance to the efficient operation of the department.  Plaintiff has not identified such a comparator because none exists.  Thus, Plaintiff has failed to articulate a claim for violation of his right to equal protection under the Fourteenth Amendment.

### G. PLAINTIFF FAILS TO SET FORTH A CLAIM FOR COUNT SEVEN OF HIS COMPLAINT, FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS: VAGUENESS (42 U.S.C. §1983).

---

[38] *Id.* at 604.
[39] *Id.* at 605.

Plaintiff contends that the requirement for department heads to obtain pre-approval in writing from the Board of Ethics prior to engaging in outside employment for remuneration is unconstitutionally vague. However, the Eleventh Circuit Court of Appeals upheld the grant of a Rule 12(b)(6) motion to dismiss claims under the First and Fourteenth Amendments in a case involving deputy sheriffs violating a nearly identical work rule. In *Thaeter v. Palm Beach County Sheriff's Office*, 449 F.3d 1342 (11th Cir. 2006), a sheriff's office work "rule requiring prior written approval before engaging in off-duty employment" was found not to be unconstitutionally vague.[40]

> Deputies Thaeter and Moran contend[ed] that their off-duty participation in explicitly sexual or pornographic pictures and videos offered for pay over the Internet for which they were compensated was protected speech under the First and Fourteenth Amendments that could not constitute the basis for their terminations. These deputy sheriffs, however, were subject to rules and regulations of their government employer, the PBCSO. Notably, a specific regulation of the PBCSO required them to "obtain prior written approval from the Sheriff using the approved request form, before engaging in other employment, occupation, profession or commercial enterprise." … The obvious purpose of the prior-approval regulation was to prevent damage to public confidence in the PBCSO by employees' off-duty employment.[41]

As in the instant case, the fact that the plaintiffs in *Thaeter* did not obtain the required prior written approval for outside employment was undisputed.

---

[40] *Id.* at 1355.
[41] *Id.* at 1352-1354.

Although "[a] government employee does not relinquish all First Amendment rights otherwise enjoyed by citizens just by reason of his or her employment," nonetheless "a governmental employer may impose certain restraints on the speech of its employees, restraints that would be unconstitutional if applied to the general public."… When an employee violates a specific rule or regulation to which he or she is subject, the government employer's position is strengthened. **Significantly, the rule requiring prior written approval before engaging in off-duty employment is not obtuse or ambiguous**.[42]

City of Atlanta Code of Ordinances Sec. 2-820(d)[43] is a similarly unambiguous rule that required all department heads to obtain pre-approval before engaging in outside employment for remuneration. Plaintiff does not contend that he complied with this Ordinance, but rather seeks to have it declared unconstitutionally vague. However, the unambiguous language of the statute provides fair warning of what kind of behavior is prohibited. Thus, Plaintiff's Complaint fails to set forth a claim for violation of Fourteenth Amendment right to due process for vagueness.

---

[42] *Id.* at 1355-1356 (citing *Colten v. Kentucky*, 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972) (explaining that a rule should comport with a "rough idea of fairness .... and [be] sufficiently specific to provide fair warning that certain kinds of conduct are prohibited"). "The rule is easily understood by persons of ordinary intelligence." *Zook v. Brown,* 865 F.2d 887, 892 (7th Cir. 1989) (concerning failure of deputy sheriff to obtain prepublication review from the sheriff before submitting a letter for publication in a local newspaper); *see Connally v. General Constr. Co.,* 269 *U.S.* 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926) (determining that a regulation is facially vague when it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application")) (emphasis added).

[43] *See* footnote 35 above.

## H. PLAINTIFF FAILS TO SET FORTH A CLAIM FOR COUNT EIGHT OF HIS COMPLAINT, FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS: LIBERTY INTEREST (42 U.S.C. §1983).

"[T]his circuit's standard for determining whether the deprivation of an individual's liberty interest has occurred without due process of law…require[s] that [a plaintiff] prove: (1) a false statement (2) of a stigmatizing nature (3) attending a governmental employee's discharge (4) made public (5) by the governmental employer (6) without a meaningful opportunity for employee name clearing."[44] Despite Plaintiff's apparent misunderstanding about his civil service status, Plaintiff was as an appointed head of a City Department who was an unclassified employee without property interest or appeal rights attendant to his at-will employment.[45] Because Plaintiff in the instant case has not plead facts showing that Defendants

---

[44] *Buxton v. City of Plant City, Fla.*, 871 F.2d 1037, 1042-1043 (11th Cir. 1989).

[45] Pursuant to F.R.E. Rule 201(b), the Court may take judicial notice of City of Atlanta Code of Ordinances Sec. 3-501(a) re: division of City employment into a system of classified and unclassified service, Sec. 114-84(b)(7) re: department heads being unclassified employees, Sec. 114-546(1) re: limitation of appeal rights to classified employees, Sec. 114-78 re: application of the progressive discipline and appeal code sections to classified employees, and City of Atlanta Communication 10-C-1361 re: City Council confirmation of Kelvin Cochran to serve as Chief of Atlanta Fire and Rescue without conferring classified status or other property interest in his employment. (*See* Municode.com (Code Library, Georgia, Atlanta) and Doc. 1, ¶ 171 for City of Atlanta Code of Ordinances Sections cited above, and http://citycouncil.atlantaga.gov/2010/images/adopted/0816/10C1361.pdf for City of Atlanta Communication 10-C-1361).

publicly made false statements of a stigmatizing nature attendant to his discharge without a meaningful opportunity for name clearing, Count Eight of Plaintiff's Complaint should be dismissed for failure to state a claim.

## I. PLAINTIFF FAILS TO SET FORTH A CLAIM FOR COUNT NINE OF HIS COMPLAINT, FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS: PROCEDURE (42 U.S.C. §1983).

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. … Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.[46]

Under Georgia law, Plaintiff was not entitled to any procedure as he was an at will public employee[47] with "no property interest protected by the due process clause."[48]  Because Plaintiff was an at will public employee with no property interest in his job and no due process rights, Count Eight of Plaintiff's Complaint should be dismissed.

---

[46] *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 270, 133 L.Ed.2d 548 (1972).
[47] *See* footnote 45, above.
[48] *Wilson v. City of Sardis*, 264 Ga. App. 178, 179, 590 S.E.2d 383 (2003) (citing *Duck v. Jacobs*, 739 F. Supp. 1545, 1548 (S.D. Ga. 1990)).

## J. MAYOR KASIM REED IS ENTITLED TO QUALIFIED IMMUNITY FOR ALL CLAIMS AGAINST HIM IN HIS INDIVIDUAL CAPACITY.

Defendant Reed is entitled to qualified immunity and, thus, should be dismissed from the instant suit as a matter of law. "Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial.[49] "An official is entitled to qualified immunity if he is performing discretionary functions and his actions do 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[50] The doctrine protects not only against liability, but the need for government officials to even defend against baseless lawsuits.[51] "[O]nly in exceptional cases will government actors have no shield against claims made against them in their individual capacities."[52] "Qualified immunity is a question of law for the courts".[53] "Because …questions of qualified immunity must be resolved 'at the earliest possible stage in litigation'… [i]t is therefore appropriate for a district court to grant

---

[49] *Golthy v. Alabama*, 287 F. Supp. 2d 1259, 1263 (M.D. Ala. 2003) *(citing Ansley v. Heinrich,* 925 F.2d 1339, 1345 (11th Cir. 1991)).

[50] *Godby v. Montgomery County Board of Edu.*, 996 F. Supp. 1390, 1400 (1998) (quoting *Lancaster v. Monroe County, Ala.,* 116 F.3d 1419, 1424 (11th Cir. 1997)) (internal quotation marks omitted).

[51] *Harlow v. Fitzgerald*, 457 U.S. 800, 812, 102 S.Ct. 2727 (1982).

[52] *Redd v. Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998) (quoting *Lassiter v. Alabama A & M Univ., Bd. of Trustees, 28 F.3d 1146, 1149 (11th Cir.1994) (en banc) (citations and emphasis omitted)).*

[53] *Post v. City of Ft. Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985)).

the defense of qualified immunity at the motion to dismiss stage if the complaint 'fails to allege the violation of a clearly established constitutional right.'"[54]

The qualified immunity analysis consists of a preliminary inquiry plus two steps. As a preliminary matter, the defendant official must prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred; once that inquiry is satisfied, the burden shifts to the plaintiff, whose allegations must articulate a constitutional violation.[55] Plaintiff must do more than refer to "general rules and abstract rights" to meet his burden.[56] Only if a plaintiff's rights were violated does the court then proceed to the final step in the qualified immunity determination—whether that right was clearly established.[57]

Here, all alleged actions by Mayor Reed as an individual Defendant in this lawsuit were within the scope of his discretionary authority as Mayor of the City of Atlanta. Furthermore, when balancing the interests of a public employee's federal rights against the governmental employer's interest in maintaining efficient and orderly provision of services to the public, "only in the rarest of cases will reasonable government officials truly know that the termination or discipline of a public

---

[54] *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (internal citations omitted).

[55] *Wood v. Kesler*, 323 F.3d 872, 877-78 (11th Cir. 2003); *Hartsfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir. 1995).

[56] *Dorsey v. Wallace*, 134 F. Supp.2d 1364, 1371 (N.D. Ga. 2000, Pannell, J.) (citing *Jones v. Cannon*, 174 F.3d 1271, 1282-83 (11th Cir. 1999)).

[57] *Wood, supra*, 323 F.3d at 877-78; *Hartsfield, supra*, 50 F.3d at 953.

employee violated 'clearly established' federal rights."[58]

Because the balancing of interests between public employees and governmental employers must be done on a case by case basis, Plaintiff cannot show that terminating a high-ranking public official for failure to comply with an ordinance requiring pre-approval for outside employment was a violation of clearly established rights at the time of his termination. Absent that showing, Defendant Reed is entitled to qualified immunity on all claims asserted against him in his individual capacity in the instant lawsuit and must be dismissed as a Defendant as a matter of law.

## V.     **CONCLUSION**

Based on the foregoing, the Defendants respectfully request that this Court grant City Defendants' Motion to Dismiss, and dismiss the Plaintiff's Complaint in its entirety.

TYPESET CERTIFICATION

Undersigned counsel hereby certifies, pursuant to Local Rules 5.1C and 7.1D, that this document was prepared in Times New Roman 14-point font.

[signatures on following page]

---

[58] *Anderson, supra,* 239 F.3d at 1222 (quoting *Hansen v. Soldenwagner*, 19 F.3d 573, 576 (11th Cir. 1994)).

Robert N. Godfrey
Chief Counsel
Georgia Bar No. 298550
*/s/ Y. Soo Jo*
Y. Soo Jo
Sr. Assistant City Attorney
Georgia Bar No. 385817
*Attorneys for Defendants*

CITY OF ATLANTA LAW DEPARTMENT
55 Trinity Ave., S.W., Suite 5000
Atlanta, Georgia  30303
404-546-4100 (Telephone)
404-739-4888 (Facsimile)
rgodfrey@atlantaga.gov
ysjo@atlantaga.gov

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| KELVIN J. COCHRAN, | § |
| | § |
| Plaintiff, | § |
| | § CASE NO. |
| v. | § |
| | § 1:15-cv-00477-LMM |
| CITY OF ATLANTA, GEORGIA; | § |
| and MAYOR KASIM REED, in his | § |
| individual capacity. | § |
| | § |
| Defendants. | § |

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on March 25, 2015, I electronically filed a copy of **CITY DEFENDANTS' MOTION TO DISMISS AND INCORPORATED BRIEF IN SUPPORT** with the Clerk of Court using the CM/ECF system which will automatically send notification of such filing to all counsel of record.

*/s/ Y. Soo Jo*
Y. Soo Jo