# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**KELVIN J. COCHRAN**,

                    Plaintiff,

    v.

**CITY OF ATLANTA, GEORGIA; and MAYOR KASIM REED, IN HIS INDIVIDUAL CAPACITY,**


                    Defendants.

Case No. 1:15-cv-00477-LMM


**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................. 1

MOTION TO DISMISS STANDARD .............................................. 2

ARGUMENT ..................................................................................... 2

I.    Plaintiff Properly Asserted A Free Speech Retaliation Claim. ............... 2

    A.    The Complaint Pleads that Cochran's Speech Is on a Matter of Public Concern ................................................. 3

    B.    The Complaint Sufficiently Pleads that Cochran's Speech Interests Outweigh the City's Interests. ..................... 6

        1.    Cochran Has A High Interest In His Speech. ..................... 7

        2.    The City's Interests Do Not Outweigh Cochran's. ............... 8

        3.    The Complaint Establishes That Cochran Effectively Advances the Very Interests Defendants Claim Justify His Firing. ................................................. 10

II.    Plaintiff Properly Alleges and Has Standing to Assert His Viewpoint Discrimination, Overbreadth, Prior Restraint, and Unbridled Discretion Claims. ................................................. 12

III.    Plaintiff Properly Asserted A Free Exercise Claim. ............................. 15

IV.    Plaintiff Properly Asserted A Claim for Violation of His Right to Expressive Association. ......................................................... 17

V.    Plaintiff Properly Asserted A Claim for Violation of His Right to Avoid Religious Hostility. ......................................................... 19

VI.    Plaintiff Properly Asserted A Claim for Violation of His Right to Equal Protection. ................................................................. 20

VII.    Plaintiff Properly Asserted A Claim that Defendants' Policies Are Unconstitutionally Vague. ......................................................... 21

VIII.  Plaintiff Properly Asserted A Claim that Defendants' Violated His Liberty Interest. .................................................................. 22

IX.  Plaintiff Properly Asserted A Claim that Defendants' Violated His Right to Procedural Due Process ...................................... 23

X.  Defendant Reed Is Not Entitled to Qualified Immunity. ...................... 24

CONCLUSION ............................................................................. 25

TYPESET CERTIFICATION ......................................................... 25

# TABLE OF AUTHORITIES

**CASES:**

*Akins v. Fulton County,*
420 F.3d 1293 (11th Cir. 2005)........................................................ 7, 24

*Alabama v. Thornhill,*
310 U.S. 88 (1940) .................................................................. 14

*American Federation of Government Employees, AFL-CIO v. United States,*
622 F. Supp. 1109 (N.D. Ga. 1984) ...................................... 20

*Anderson v. Winter,*
631 F.2d 1238 (5th Cir. 1980).............................................. 20

*Bell Atlantic Corporation v. Twombly,*
550 U.S. 544 (2007) ............................................................... 2

*Cafe Erotica of Florida, Inc. v. St. Johns County,*
360 F.3d 1274 (11th Cir. 2004)............................................. 13

*CAMP Legal Defense Fund, Inc. v. City of Atlanta,*
451 F.3d 1257 (11th Cir. 2006)............................................. 14

*Capitol Square Review & Advisory Board v. Pinette,*
515 U.S. 753 (1995)................................................................. 7

*City of New Orleans v. Dukes,*
427 U.S. 297 (1976)................................................................ 20

*Clark v. Jeter,*
486 U.S. 456 (1988)................................................................ 20

*Cleveland Board of Education v. Loudermill,*
470 U.S. 532 (1985)........................................................... 23, 25

*Connick v. Myers,*
    461 U.S. 138 (1983) ................................................................. 1

*Cook v. Gwinnett County School District,*
    414 F.3d 1313 (11th Cir. 2005) ........................................*passim*

*Edwards v. Prime Inc.,*
    602 F.3d 1276 (11th Cir. 2010) ............................................... 2

*Everson v. Board of Education of Ewing Township,*
    330 U.S. 1 (1947) ................................................................... 19

*Fikes v. City of Daphne,*
    79 F.3d 1079 (11th Cir. 1996) ................................................ 3

*Forsyth County, Georgia v. Nationalist Movement,*
    505 U.S. 123 (1992) ............................................................... 13

*Fortner v. Thomas,*
    983 F.2d 1024 (11th Cir. 1993) ............................................. 24

*Grayned v. City of Rockford,*
    408 U.S. 104 (1972) ............................................................... 21

*Gresham v. City of Atlanta,*
    542 F. App'x 817 (11th Cir. 2013) .................................... 7, 10

*Grosz v. City of Miami Beach, Florida,*
    721 F.2d 729 (11th Cir. 1983) ............................................... 16

*Harrison v. Willie,*
    132 F.3d 679 (11th Cir.1998) ................................................ 23

*Holloman v. Harland,*
    370 F.3d 1252 (11th Cir. 2004) ............................................. 24

*Hope v. Pelzer,*
    536 U.S. 730 (2002) ............................................................... 24

*Larson v. Valente,*
    456 U.S. 228 (1982) ................................................................. 19

*McCabe v. Sharrett,*
    12 F.3d 1558 (11th Cir. 1994) ............................................... 17

*McCoy v. Alabama Department of Corrections,*
    427 F. App'x 739 (11th Cir.2011) .......................................... 23

*McKinney v. Pate,*
    20 F.3d 1550 (11th Cir. 1994) ............................................... 23

*National Treasury Employees Union v. United States,*
    990 F.2d 1271 (D.C. Cir. 1993) .............................. 6, 13, 21, 25

*Ogburia v. Cleveland,*
    380 F. App'x 927 (11th Cir.2010) .......................................... 23

*Pickering v. Board of Education,*
    391 U.S. 563 (1968) ................................................................... 3

*Rankin v. McPherson,*
    483 U.S. 378 (1987) ................................................................... 6

*Rosenberger v. Rector & Visitors of University of Virginia,*
    515 U.S. 819 (1995) ................................................................. 12

*Scarbrough v. Morgan County Board of Education,*
    470 F.3d 250 (6th Cir. 2006) .................................................... 5

*Sherbert v. Verner,*
    374 U.S. 398 (1963) ................................................................. 15

*Stanley v. City of Dalton,*
    219 F.3d 1280 (11th Cir. 2000) ............................................ 8-9

*Thomas v. Harvard,*
    45 F. Supp. 2d 1353 (N.D. Ga. 1999) ................................... 22

*Torcaso v. Watkins*,
    367 U.S. 488 (1961) ................................................................. 16

*Tucker v. State of California Department of Education*,
    97 F.3d 1204 (9th Cir. 1996) ....................................... 3-4, 6, 7, 9

*United States v. National Treasury Employees Union*,
    513 U.S. 454 (1995) ................................................................... 4

*Watts v. Florida International University*,
    495 F.3d 1289 (11th Cir. 2007) ......................................... 2, 16

*Wood v. City of Lakeland*,
    203 F.3d 1288 (11th Cir. 2000) ............................................. 24

## STATUTES AND ORDINANCES:

Atlanta Code of Ordinances Sec. 2-820(d) ....................... 12-15, 21-22
Atlanta Code of Ordinances Sec. 114-528 ................................... 23
Atlanta Code of Ordinances Sec. 114-530 ............................... 24-25

## INTRODUCTION

This case is at the motion to dismiss stage, thus the Complaint's allegations must be taken as true and construed in the light most favorable to the Plaintiff.  Defendants simply cannot satisfy the exceedingly high motion to dismiss standard because, as set forth below, the Complaint far exceeds the "plausibility" standard for each of Plaintiff's claims.

Defendants' motion is noteworthy, however, for its utter disregard of government employees' fundamental rights.  In essence, they contend that government employees who do not share their views on moral, social, and political issues are *per se* disruptive and may be justifiably fired.  The Supreme Court has held that it is the courts' "responsibility to ensure that citizens are not deprived of fundamental rights by virtue of working for the government."  *Connick v. Myers*, 461 U.S. 138, 147 (1983).  Defendants' approach ignores this admonishment, and guarantees that such deprivations will happen as a matter of course.

Their double-standard is even worse than their disregard for employees' fundamental rights.  They claim that Cochran's religious views concerning marriage and sexual morality disrupted the workplace because some employees may object to his views, thus justifying his firing.  But there are many City employees who share Cochran's religious beliefs and who object to the Mayor's and Councilmembers' contrary views.  Under Defendants' newly concocted standard of "disruption through disagreement," the Mayor and agreeing Councilmembers should lose their jobs.  Defendants' disregard for employees' constitutional rights and blatant double-standard do not accurately reflect the law.  Their motion should be rejected in its entirety.

## MOTION TO DISMISS STANDARD

On a motion to dismiss, this Court must take the "factual allegations in the complaint as true and construe them in the light most favorable to [Cochran]." *Edwards v. Prime Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). That is, the Court must construe the Complaint "broadly," such that it need only include "enough factual matter to . . . suggest the required element[s]" for a claim. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Accordingly, Cochran's claims can only be dismissed if "the facts as pled do not state a claim for relief that is plausible on its face." *Edwards*, 602 F.3d at 1291 (citations omitted). This plausibility standard is not a "probability requirement." Rather it "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Watts*, 495 F.3d 1295–96 (citations and internal quotations omitted). Plaintiff's Complaint easily satisfies this liberal standard.

## ARGUMENT

### I.  Plaintiff Properly Asserted A Free Speech Retaliation Claim.

To state a valid free speech retaliation claim, a plaintiff must allege that "(1) the speech involved a matter of public concern; (2) the employee's free speech interests outweighed the employer's interest in effective and efficient fulfillment of its responsibilities; and (3) the speech played a substantial part in the adverse employment action." *Cook v. Gwinnett Cnty. Sch. Dist.*, 414 F.3d 1313, 1318 (11th Cir. 2005). If these factors are met, "the burden then shifts to the employer to show by a preponderance of the evidence that it would have made the same decision even in the absence of

the protected speech." *Id.* This test is distilled from the four-step analysis set forth in *Pickering v. Board of Education*, 391 U.S. 563 (1968). The Defendants attack the sufficiency of the Complaint as it relates to the first two factors only, so Plaintiff limits his response to showing that the Complaint easily satisfies those two factors.

**A.** **The Complaint Pleads that Cochran's Speech Is on a Matter of Public Concern.**

Defendants' primary attack on Plaintiff's retaliation claim is their remarkable assertion that Cochran's speech does not relate to a matter of public concern. Defs.' Mot. 7-8. "Speech addresses a matter of public concern when the speech can be 'fairly considered as relating to any matter of political, social, or other concern to the community.'" *Fikes v. City of Daphne*, 79 F.3d 1079, 1084 (11th Cir. 1996) (quoting *Connick*, 461 U.S. at 146). As its definition indicates, "public concern" is an extremely broad concept that includes "almost *any* matter other than speech that relates to internal power struggles within the workplace." *Tucker v. State of Cal. Dept. of Educ.*, 97 F.3d 1204, 1210 (9th Cir. 1996).

Here, Cochran's book, *Who Told You That You Were Naked*, addresses a matter of public concern. Compl. ¶ 92. "Cochran wrote and self-published [this] non-work-related, 162-page, religious book that expresses his religious beliefs about God's purpose for our lives." *Id.* ¶ 8. He wrote the book on his own time, primarily "at home early in the mornings and on weekends as well." *Id.* ¶ 90. On a few pages, the book addresses sexual morality and marriage, and expresses the biblical and orthodox Christian teaching that "God created sexual acts for procreation and marital pleasure in holy

matrimony between a man and a woman and that the pursuit of sex outside of marriage—including fornication, homosexual acts, and all other types of non-marital sex—is contrary to God's will." *Id.* ¶¶ 8, 95-101. Cochran's book is "written primarily for men, and is intended to help them fulfill God's purpose for their life." *Id.* ¶ 93. And, as Defendants correctly observe, the book is for sale to the general public on Amazon. Defs.' Mot. 5 n.7.

Because Cochran's speech is addressed to a public audience, engaged in overwhelmingly outside the workplace, and involves non-work-related content, it plainly "fall[s] within the protected category of citizen comment on matters of public concern rather than employee comment on matters related to personal status in the workplace." *U.S. v. Nat'l Treasury Employees Union*, 513 U.S. 454, 466 (1995). In *National Treasury Employees Union*, the Supreme Court found that dance performance reviews written by a microbiologist at the FDA and articles about the environment written by a tax examiner fell within the public concern doctrine. *Id.* at 461. Cochran's non-work-related, religious book that he wrote and published outside of work is entitled to constitutional protection as well.

Defendants' argument is essentially that "speech about religion is not on matters of public concern," a contention that the Ninth Circuit flatly and rightly rejected in *Tucker*. 97 F.3d at 1210. The employee in *Tucker* was banned from writing a religious phrase on the labels of projects he worked on and displaying and distributing religious materials in the workplace. *Id.* at 1208. The court found that this "religious expression," that occurred solely within the workplace, was "obviously of public concern." *Id.* at 1210. Cochran's speech is entitled to even stronger protection because it is non-

work-related, made available to the public, and addresses matters of deep concern to a broad swath of the community. *See Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 257 (6th Cir. 2006) (public employee's outside of work speech that related to "religion and … homosexuality" was speech on a matter of public concern).

Indeed, for at least the past decade, the country has been embroiled in a national debate over whether marriage should include same-sex couples. The Bible's teachings regarding marriage and sexual morality, and the articulation of these teachings by Christians, like Cochran, to the broader public, is an important contribution to this ongoing debate. And it is particularly ironic for the Defendants to very publicly fire Cochran precisely because his views on sexual morality and marriage differ from the City's and the Mayor's views on the same subject,[1] and then file a motion in this case claiming that Cochran's views are not a matter of public concern.

Defendants attempt to sidestep the inevitable conclusion that Cochran's speech addresses a matter of public concern by wrongly claiming

---

[1] *See* Compl. ¶ 11 ("Defendants fired Cochran solely because he holds religious beliefs concerning same-sex marriage and homosexual conduct that are contrary to the Mayor's and the City's views on these subjects"); ¶ 157 (in a public statement, Mayor Reed stated: "I profoundly disagree with and am deeply disturbed by the sentiments expressed in the paperback regarding the LGBT community."); ¶ 158 (Mayor Reed's statement also stated: "I want to be clear that the material in Chief Cochran's book is not representative of my personal beliefs, and is inconsistent with the Administration's work to make Atlanta a more welcoming city for all of her citizens – regardless of their sexual orientation, gender, race and religious beliefs."); ¶ 159 (on his Facebook page, Mayor Reed stated "[t]he contents of [Cochran's] book do not reflect the views of Mayor Reed or the Administration.").

that his book is for a "narrow target audience and limited purpose." Defs.' Mot. 7. But they belie their own argument by noting that the book is for sale to the general public on Amazon. Defs.' Mot. 5 n.7. And they advance their misguided argument by adding words not contained in Plaintiff's allegations. *Id.* at 7 (adding "[Christian]" to ¶ 93 in an attempt to make the book appear to have a narrow target audience and purpose).

More critically, they ignore that the "[t]he Supreme Court has also made it clear that an employee need not address the public at large, for his speech to be deemed to be on a matter of public concern." *Tucker*, 97 F.3d at 1210. Indeed, in *Rankin v. McPherson*, 483 U.S. 378, 384-87 (1987), the Court found that an employee's statement made to only one co-worker concerning President Reagan was on a matter of public concern. The public concern doctrine is simply not dependent upon "the number of interested listeners or readers but [on] whether the expression relates to some issue of interest beyond the employee's bureaucratic niche." *Nat'l Treasury Employees Union v. U.S.*, 990 F.2d 1271, 1273 (D.C. Cir. 1993). Here, Cochran's book addresses the general public on a topic of great community concern. Defendants' assertions that the book has a narrow target audience and limited purpose are made out of whole cloth.

## B. The Complaint Sufficiently Pleads that Cochran's Speech Interests Outweigh the City's Interests.

Cochran's Complaint also sufficiently alleges that his "free speech interests outweigh[] the [City's] interest in effective and efficient fulfillment of its responsibilities," which is the second prong of the four-part *Pickering* test. *Cook*, 414 F.3d at 1318.

## 1. Cochran Has A High Interest In His Speech.

The first step in evaluating the second prong is determining the employee's interest in his speech. The higher the employee's interest, the greater the government's countervailing interest must be to justify a finding that the speech is unprotected. *Akins v. Fulton County*, 420 F.3d 1293, 1304 (11th Cir. 2005); *see also Gresham v. City of Atlanta*, 542 F. Appx. 817, 819-20 (11th Cir. 2013) (plaintiff's interest in "venting her frustration with her superiors" was "not a strong one," which is an appropriate consideration "in the balancing process"). In *Akins*, the plaintiffs claimed that the county had retaliated against them for raising concerns over irregularities in how the purchasing department processed bids. 420 F.3d at 1304. Recognizing that a "'core concern' of the First Amendment is the protection of whistleblowers who report government wrongdoing," the Eleventh Circuit held that the "plaintiffs' interest in this speech is high." *Id*.

Cochran's non-work-related religious speech likewise is a "core concern" of the First Amendment—far more so than whistleblowers' speech. The Supreme Court has explained that its "precedent establishes that private religious speech, far from being a First Amendment orphan, is as fully protected under the Free Speech Clause as secular private expression," and that "in Anglo–American history … government suppression of speech has so commonly been directed *precisely* at religious speech that a free-speech clause without religion would be Hamlet without the prince." *Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 760 (1995); *see also Tucker*, *supra*. Cochran is a member, Deacon, and frequent teacher and preacher at his Church. Compl. ¶¶ 68-69. His book was an outgrowth of his dedicated

Church service, having been inspired by a men's Bible study he was leading. *Id.* ¶¶ 83-86. He "felt led by God" to both conduct a study of the Bible and to convey his findings through writing and self-publishing a book. *Id.* ¶¶ 86-90. Cochran's interest in his speech thus occupies the highest possible level.

### 2. The City's Interests Do Not Outweigh Cochran's.

The next step in evaluating the second prong of the *Pickering* test is determining whether the government can show that its "interest, as an employer, in promoting the efficiency of the public services it performs through its employees" is sufficient to outweigh Cochran's high level of interest in his First Amendment expression. *Stanley v. City of Dalton*, 219 F.3d 1280, 1289 (11th Cir. 2000). According to the allegations of the Complaint, which is the only evidence the court can consider at this stage, Defendants are incapable of making such a showing.

Defendants cite broadly formulated government interests like "secur[ing] discipline, mutual respect, [and] trust and particular efficiency among the ranks" of its Fire Department as the competing interests that outweigh Cochran's speech interest. Defs.' Mot. 9. But they fail to explain how these interests are impacted in any way by Cochran's writing and self-publication of a non-work-related book during his own time that "expresses his religious beliefs about God's purpose for our lives." Compl. ¶ 8. In fact, there is no such evidence in the Complaint, and its allegations are all that this Court may consider at the motion to dismiss stage.

Defendants point to Cochran's limited distribution of the book at work as disruptive, Defs.' Mot. 9, but there are several problems with this. First, Cochran was not fired for distributing the book, but rather for the religious

beliefs expressed in his book. *See supra* at 5 & n.1. Second, Defendants could not constitutionally bar the distribution of religious materials at work. *See Tucker*, 97 F.3d at 1210 (striking policy that barred employees from "displaying or promoting religious books, pamphlets, tracts, brochures, pictures, etc., outside" one's workspace). Third, there is no evidence that the distribution caused any disruption at all. Indeed, the book was distributed to a handful of employees, most of whom had requested a copy in advance and none of whom objected. Compl. ¶¶ 126-135. Moreover, "[b]etween January 2014 when Cochran began giving out a few free copies of his book to AFRD employees and his suspension in November 2014, no AFRD employees raised any complaints whatsoever to Cochran about his book," *id*. ¶ 136, and its limited distribution "caused no disruption with any city practices or procedures or in the workplace at all," *id*. ¶ 137. This claim is a red herring.

Instead, Defendants' actual position is that people who work for the City must share its views, and if they do not it is *per se* disruptive and the employee can be justifiably fired. Defs.' Mot. 9. They claim this is especially true in the context of employees who work for paramilitary organizations like AFRD. *Id*. Yet in *Stanley*, the Eleventh Circuit held that a police officer's right to voice a "theft accusation" against a superior officer that ultimately proved false outweighed the interest in "mutual respect, discipline, and trust in the quasi-military setting of the police department" because there was "no evidence of disruption of the Dalton police department's operations." 219 F.3d at 1289-90. Likewise here, there is no evidence of disruption.

Further, one of the paramilitary cases Defendants cite states that the government's elevated interests in that context are limited to "comments

concerning coworkers' performance of their duties and superior officers' integrity" because such comments "can directly interfere with the confidentiality, spirit de corps and efficient operation" of paramilitary departments. *Gresham*, 542 F. Appx. at 819. Cochran's book had nothing whatsoever to do with coworkers' performance or superior officers' integrity, so any paramilitary concerns are muted.

### 3. The Complaint Establishes That Cochran Effectively Advances the Very Interests Defendants Claim Justify His Firing.

The Complaint unequivocally demonstrates that Cochran ran AFRD in exemplary fashion and did not undermine but rather uniquely excelled at advancing Defendants' interests in "secur[ing] discipline, mutual respect, [and] trust and particular efficiency among the ranks" of AFRD. Defs.' Mot. 9. Among other things, the Complaint alleges that:

- "Cochran's religious beliefs … compel him to treat all fire department staff under his command, and all members of the community he serves, with dignity, justice, equity, and respect, regardless of their personal traits, characteristics, and beliefs," Compl. ¶ 73;

- "Cochran's leadership and management philosophy is centered on ensuring that every member of a fire department he leads is treated with dignity, justice, equity, and respect, regardless of any personal characteristic that sets them apart," *id*. ¶ 75;

- "In 2008, when Cochran first became Atlanta's Fire Chief, he set out to achieve this goal by instructing his subordinates to assemble a group of firefighters that fully represented the diverse backgrounds, characteristics, and beliefs within AFRD" and that "two LGBT employees were members of this group," *id*. ¶¶ 76-77;

- "Cochran … worked with this group to develop a vision, mission, and governing philosophy for AFRD," which resulted in a "document called

the Atlanta Fire Rescue Doctrine," *id.* ¶¶ 78-79; and

- "Cochran followed this procedure for developing the fire department's policies and procedures because he believes it is the best way for him to discharge his duty to God that he treat every employee within a fire department with dignity, justice, equity, and respect," *id.* ¶ 80.

Cochran's commitment to excellence and ability to effectively lead a diverse work force garnered the attention of President Barack Obama, who, in 2009, nominated Cochran to the post of U.S. Fire Administrator, the top ranking fire official in the nation. *Id.* ¶ 52-56.

The Complaint shows that the AFRD achieved exceptional results during Cochran's tenure, which would not have been possible if it suffered from the disciplinary and trust issues Defendants raise. For example, on November 1, 2014—just a few weeks before his suspension and a year after he published his book—the city obtained, due to Cochran's leadership, a Class 1 Public Protection Classification (PPC) rating from the Insurance Services Office for the first time in Atlanta's history. *Id.* ¶ 64-66.

In 2012, Mayor Reed issued a press release congratulating Cochran on being named Fire Chief of the Year by *Fire Chief* magazine, *id.* ¶¶ 60-61, and stated the following about his exceptional leadership of AFRD:

Under Chief Cochran's leadership, the department has seen dramatic improvements in response times and staffing. In July, the department reached full staffing of four firefighters per engine and zero vacant firefighter positions for the first time in the history of the department. The department also reached a new level of responsiveness on fire emergencies, meeting the National Fire Protection Association Codes and Standards for response coverage 81% of the time, up from 65% in 2010.

*Id.* ¶ 62.

Defendants also baldly assert that Cochran's book "contain[s] moral

judgments about certain groups of people," which is false and in any event is not supported by the Complaint's allegations. Moreover, the Complaint alleges that "[d]uring his seven years as Atlanta's Fire Chief, Cochran never discriminated against, and was never accused of discriminating against, anyone based on race, gender, sexual orientation, or any other protected characteristic." *Id.* ¶ 168. The Complaint does not in any way support Defendants' contention that the views expressed in Cochran's book caused disruptions within AFRD. In fact, it demonstrates the exact opposite.

## II. Plaintiff Properly Alleges and Has Standing to Assert His Viewpoint Discrimination, Overbreadth, Prior Restraint, and Unbridled Discretion Claims.

Viewpoint discrimination occurs "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995). Cochran's Complaint plainly states that Defendants suspended and fired him based on the religious views concerning same-sex marriage and homosexual conduct expressed in his book. *See supra* at 5 & n.1. It also alleges that Defendants "allow[] other, similarly-situated City employees to express viewpoints supportive of same-sex marriage and homosexual conduct," and that they thereby "engaged in viewpoint discrimination." Compl. ¶ 253.

The Complaint also properly alleges a prior restraint claim. While Atlanta Code of Ordinances Sec. 2-820(d) does not on its face apply to a City employees' publication of an article, book, or other work unrelated to their employment, Compl. ¶¶ 171-72, Defendants have stated that Cochran violated the regulation by failing to get prior approval before writing and self-

publishing his book. Defs.' Mot. 19-20, 25. But *National Treasury Employees Union* makes clear that such regulations impermissibly "chill[] potential speech before it happens" when they are applied to government employees' "speeches and articles" that "address[] … a public audience, [are] made outside the workplace, and involve[] content largely unrelated to their government employment." 513 U.S. at 466, 468. Cochran alleges that this is precisely what Sec. 2-820(d) does here. Compl. ¶ 261 (Sec. 2-820(d) and Defendants' practices "constitute prior restraints because they prohibit or censure speech before it can take place."); ¶ 262 ("A large portion of the speech to which Defendants' prior restraint policies … and practice apply do not involve the subject matter of government employment and take place outside of the workplace."); ¶ 264 ("Gagging of publication is permitted only in exceptional circumstances … not present here.").

The First Amendment also prohibits the government from establishing prior restraints on speech that "vest … unbridled discretion in a government official." *Forsyth Cnty., Ga. v. Nationalist Movement*, 505 U.S. 123, 133 (1992); *see also Cafe Erotica of Florida, Inc. v. St. Johns Cnty.*, 360 F.3d 1274, 1284 (11th Cir. 2004) (striking sign code as impermissible prior restraint because it lacked "narrow, objective, and definite standards to guide" officials' discretion in enforcing it). The Complaint plainly asserts that Sec. 2-820(d) and Defendants' practices grant unbridled discretion because they lack clear and definite standards to guide enforcement officials. Compl. ¶ 174 ("Sec. 2-820(d) contains no criteria or standards to guide the City's Ethics Officer in determining whether a covered employee's request should be submitted to the Board of Ethics."); ¶ 175 (Sec. 2-820(d) lacks "criteria or standards to

guide the Board of Ethics in determining whether to approve or deny a covered employee's request to engage in 'private employment or render services for private interests.'"); *see also id.* ¶¶ 266-68 (same).

The Complaint also properly pleads an overbreadth claim. A law is overbroad when it "does not aim specifically at evils within the allowable area of [government] control but . . . sweeps within its ambit other activities that in ordinary circumstances constitute an exercise" of protected rights. *Alabama v. Thornhill*, 310 U.S. 88, 97 (1940). Cochran's complaint plainly alleges an overbreadth claim. *See* Compl. ¶¶ 255-258.

Defendants wrongly assert that Cochran lacks standing to assert any of the above claims against Sec. 2-820(d) because he "does not allege that he sought or was denied … written approval" under that regulation. Defs.' Mot. 10-12. But this is backwards. Defendants have taken the position that Sec. 2-820(d) (and/or some other City policy or practice) mandates that employees get prior approval before writing and publishing any article, book, or similar work. Defs.' Mot. 19-20, 25. Cochran was injured by this regulation and its application to him, *i.e.,* he was *fired*, and thus has standing to challenge it both as applied and on its face. *See CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1271 (11th Cir. 2006) ("A plaintiff who has established constitutional injury under a provision of a statute as applied to his set of facts may also bring a facial challenge, under the overbreadth doctrine, to vindicate the rights of others not before the court….").

Moreover, Cochran, out of an abundance of caution, asked the City's Ethics Officer whether he could publish a non-work-related, faith-based book. Compl. ¶¶105-107. He was told "yes." *Id.* ¶ 108. In light of this response,

Cochran could not have known that he was in violation of Sec. 2-820(d). Further, Defendants' firing of Cochran because of the religious beliefs expressed in his book and their open hostility to his religious beliefs demonstrates that it would have been futile for Cochran to have sought approval under the regulation. The answer would have been "no."

### III. Plaintiff Properly Asserted A Free Exercise Claim.

"Government may neither compel affirmation of a repugnant belief, nor penalize or discriminate against individuals or groups because they hold religious views abhorrent to the authorities." *Sherbert v. Verner*, 374 U.S. 398, 402 (1963) (citations omitted).

In *Watts*, the lone free exercise case cited by Defendants, the Eleventh Circuit ruled that a counseling student terminated from his practicum employment for including "church" as one of the options where a client might find a bereavement support group had successfully pled a Free Exercise claim. As the Eleventh Circuit explained, "Watts has stated in his amended complaint that his 'religious beliefs include the belief' at issue here. His representation is all that is necessary to raise the possibility that his belief is a religious one 'above the speculative level.'" 495 F.3d at 1299.

Cochran's allegations go far beyond those in *Watts*. He alleges that Defendants terminated him for writing a book that expressed his sincerely-held religious beliefs. Compl. ¶ 282. He further alleges that his faith "requires that he believe, profess, and teach others about historical Christian teachings" regarding marriage and sexual immorality, *id*. ¶ 283, and that he "felt led by God to write a Bible study that reflected" these teachings, *id*. ¶ 88. Indeed, Cochran's purpose for writing the book was to "guide men"—to teach

them—how to "live a faith-filled, virtuous life." *Id.* ¶ 94. But because Defendants (in the words of Defendant Reed) "profoundly disagree with" and are "deeply disturbed by the sentiments expressed" in Cochran's book, Cochran was fired. *Id.* ¶ 157.

"[G]overnmental action violates the Constitution if it is based upon disagreement with religious tenets or practices" or "if the 'essential effect' of the government action is to influence negatively the pursuit of religious activity or the expression of religious belief." *Grosz v. City of Miami Beach, Florida*, 721 F.2d 729, 733 (11th Cir. 1983). Not only have Defendants admitted that their disagreement with Cochran's beliefs was the basis for his termination, but their actions sent a clear message to Cochran and all City employees to never say or publish their beliefs if they contradict the City's.

Just as the student in *Watts* sufficiently alleged a Free Exercise violation based upon his belief that he should inform patients of religious options "that will meet the appropriate therapy protocol for the patient," 495 F.3d at 1296, so too has Cochran sufficiently alleged that his beliefs compelled him to write a book discussing his faith, a book that served as the Defendants' illegal justification for Cochran's termination.

The Free Exercise Clause also prohibits the government from "limiting public offices to persons who have, or perhaps more properly profess to have, a belief in some particular kind of religious concept." *Torcaso v. Watkins*, 367 U.S. 488, 494 (1961) (striking down Maryland law requiring "a declaration of belief in the existence of God" by government officials). Here, Defendants have enacted a similar religious test "that excludes those who hold and profess in a public manner historical Christian beliefs about marriage and

sexuality." Compl. ¶ 291. Thus, Cochran has also properly pled that Defendants' "religious test" violates his Free Exercise rights.

## IV. Plaintiff Properly Asserted A Claim for Violation of His Right to Expressive Association.

"The right of expressive association—the freedom to associate for the purpose of engaging in activities protected by the First Amendment, such as speech, assembly, petition for the redress of grievances, and the exercise of religion—is protected by the First Amendment." *McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir. 1994). However, Defendants' singular reliance on *McCabe* to argue that Cochran has failed to plead a claim for violation of his right to expressive association is misplaced because *McCabe* dealt with the right to intimate association. There, the court found that a police chief's secretary's right to marry an officer on the squad was outweighed by the police department's interest in confidentiality because the secretary had access to confidential information involving others, including her husband.

Here, Cochran does not allege an infringement of his right to intimate association. Rather, his claim is based upon his involvement with Elizabeth Baptist Church, where Cochran is a Deacon and frequently preaches, teaches Sunday school classes, and leads a men's Bible study. Compl. ¶¶ 68-69. The Church is an expressive association, *id*. ¶ 302, and Cochran's book was birthed from that association—specifically a men's Bible study where a discussion from Genesis was the impetus for the book, *id*. ¶¶ 83-94.

By retaliating against Cochran for the publication and distribution of a book designed to spread the religious teachings of Cochran's Church, Defendants have violated his right to expressive association. In *Cook*, the

Eleventh Circuit ruled that a school district violated a bus driver's right to expressive association when it retaliated against her for recruiting fellow drivers to join a union-like organization and seeking to distribute union materials to her co-workers. 414 F.3d at 1313. "[T]he law is clearly established that public employees have a First Amendment right to engage in associative activity without retaliation." *Id.* at 1320. "Cook's interest in associating with the USEA far outweighed any countervailing state interest" in discipline and efficiency in the workplace. "Cook's personnel file contained no incidents of misconduct and no record of a poor evaluation" and "the defendants were unable to point to any specific job duties that Cook neglected as a result of her USEA speech." *Id.* at 1320-21. The absence of evidence that Cook's association actually impacted her job performance tipped the balance under *Pickering* decisively in her favor.

The same is true of Cochran. His church-related speech[2] in the book was published in late 2013, Compl. ¶ 91, and he began selectively handing out copies to the Mayor and other colleagues in January 2014, *id.* ¶¶ 117-127. In the year between Cochran's publication of the church-related book and his suspension in 2014, Cochran performed his job duties excellently. *See* § I.B.3., *supra*. There were no complaints against him about the book, nor was there any "disruption with any city practices or procedures or in the workplace at all." Compl. ¶¶ 136-37. Because Defendants' interests in

---

[2] "In analyzing free association claims," the Eleventh Circuit "do[es] not apply the public concern portion of the *Pickering* analysis." *Cook*, 414 F.3d at 1320. Regardless of whether Cochran's book was on a matter of public concern, his right to expressive association with his church cannot be infringed.

"discipline and efficiency" were not impacted by Cochran's church-related, expressive activities, Cochran's interest in associating with Elizabeth Baptist Church and jointly expressing church doctrine through the publication and dissemination of a book outweigh Defendants' asserted interests. Cochran has sufficiently alleged that his right to expressive association was infringed.

## V. Plaintiff Properly Asserted A Claim for Violation of His Right to Avoid Religious Hostility.

The Establishment Clause "affirmatively mandates accommodation, not merely tolerance, of all religions, and forbids hostility toward any." *Lynch v. Donnelly*, 465 U.S. 668, 673 (1984). It also mandates "denominational neutrality," which bars the government from preferring one religion over another. *Larson v. Valente*, 456 U.S. 228, 245-46 (1982); *see also Everson v. Bd. of Educ. of Ewing Twp.*, 330 U.S. 1, 15 (1947) (Establishment Clause bars the government from "prefer[ring] one religion over another").

Defendants misconstrue Cochran's Establishment Clause claim, arguing that they have not created an "intrusion by the state into the church or vice versa." Defs.' Mot. 16. But Cochran's claim is that his termination by Defendants was based upon their hostility towards his religious beliefs. Defendants have established their viewpoint on hotly contested social and moral issues, and Cochran was fired for "heresy" by speaking and holding religious views regarding sexuality morality that are different than Defendants'. *See supra* at 5 & n.1 (highlighting Mayor Reed's public statements targeting Cochran's religious beliefs). Cochran also alleges that Defendants are discriminating among religious views by "allow[ing] employees similarly situated to Cochran … to express … religious beliefs and

viewpoints in favor of same-sex marriage and homosexual conduct," while punishing Cochran for his contrary views. Compl. ¶¶ 317-318.

This open hostility towards Cochran's religious beliefs, and discrimination among religious views, states an Establishment Clause claim.

## VI.   Plaintiff Properly Asserted A Claim for Violation of His Right to Equal Protection.

Defendants again misconstrue Cochran's claims, arguing that his Equal Protection claims are based on a "class of one" theory. That is false. As Cochran articulated in his Complaint, he is "a Christian and a member of a Christian church." Compl. ¶ 328. Federal courts have consistently held that, under the Equal Protection Clause, classifications based upon religion are suspect and subject to strict scrutiny. *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (classifications that are "drawn upon inherently suspect distinctions such as race, religion, or alienage" are analyzed under strict scrutiny); *Anderson v. Winter*, 631 F.2d 1238, 1240 (5th Cir. 1980) (same); *Am. Fed'n of Gov't Employees, AFL-CIO v. United States*, 622 F. Supp. 1109, 1112 (N.D. Ga. 1984) (same). Furthermore, distinctions among similarly-situated groups that affect fundamental rights, including the rights of free speech and freedom of association, "are given the most exacting scrutiny." *Clark v. Jeter*, 486 U.S. 456, 461 (1988).

Cochran alleges that he and other religious individuals who oppose same-sex marriage and the morality of homosexual conduct based upon their biblically-based beliefs are being treated differently from similarly-situated employees whose beliefs and viewpoints are favorable to same-sex marriage and homosexual conduct. Compl. ¶¶ 329-31. Cochran, as a member of a

religious class, was terminated by Defendants pursuant to their policies and practice for expressing his religious beliefs. Other employees who express beliefs that align with Defendants are not subject to such retaliation. It is only by ignoring these well-pled allegations that Defendants can even plausibly argue that Cochran's Equal Protection claim should be dismissed.

## VII. Plaintiff Properly Asserted A Claim that Defendants' Policies Are Unconstitutionally Vague.

Defendants' pre-clearance policy, Sec. 2-820(d), is unconstitutionally vague because there are no guidelines regarding what expressive activities will or will not be approved under it. Defendants are given unlimited discretion to pick and choose which speech they will approve under Sec. 2-820(d). Defendants misconstrue this as a claim that *any* pre-approval requirement is inherently vague. But that is not Cochran's claim.

"[B]ecause we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Any pre-approval requirement must have guidelines explaining what types of "private employment"—in the words of Sec. 2-820(d)—are banned and which are not.

For example, the Supreme Court has held that requiring government employees to obtain approval before publishing a written work for compensation "imposes a significant burden on expressive activity." *Nat'l Treasury Employees Union*, 513 U.S. at 468. Thus, it is clearly established that among the types of "private employment" that Defendants cannot restrict is publication of a book like Cochran's. Yet, as Cochran alleges in his

Complaint, Sec. 2-820(d) does not provide the required guidance to City officials on this important protection for employee speech or impose any limitations on the policy's scope.  Compl. ¶¶ 174-77; 340-44.

Defendants' complete failure to draft Sec. 2-820(d) with sufficient clarity, leaving approval for "private employment" to the complete whim of officials, is the basis for Cochran's void-for-vagueness claim.

## VIII. Plaintiff Properly Asserted A Claim that Defendants' Violated His Liberty Interest.

"Eleventh Circuit precedent is clear that a protected liberty interest is at stake if there is a stigmatizing allegation made in conjunction with a discharge." *Thomas v. Harvard*, 45 F. Supp. 2d 1353, 1354 (N.D. Ga. 1999). Contrary to Defendants arguments, Cochran's liberty interest is not contingent upon whether or not he is a classified or unclassified employee.  In *Thomas*, this Court found that a police officer "sufficiently alleged a stigmatizing allegation and the dissemination of that allegation through Police Chief Harvard's alleged statement to the press that Plaintiff may have been involved in criminal activity." *Id.*

Here, Cochran has pled that Defendants made several public, stigmatizing statements regarding Cochran accusing him of discriminating against homosexuals even though Cochran has never discriminated against anyone on the basis of sexual orientation.  Compl. ¶¶ 164, 168, 169, 348. Specifically, Defendant Reed issued a public statement and posted a comment on his public Facebook page demonizing Cochran for his biblically-based views as expressed in his book. *Id.* ¶¶ 154-65.  Not only was Cochran ultimately terminated based upon the completely unfounded accusations

leveled against him by Defendant Reed, but he lost an employment opportunity in another city as a result. *Id.* ¶¶ 169, 206-09. Such allegations establish a plausible violation of Cochran's liberty interest.

## IX.  Plaintiff Properly Asserted A Claim that Defendants' Violated His Right to Procedural Due Process.

Defendants argue that Cochran, as an "unclassified" and "at-will" employee, is not given the right to appeal under the Atlanta Code of Ordinances and therefore suffered no violation of his right to procedural due process.  Once again, this is not the basis of Cochran's claims.  Rather, Cochran alleges that he has a property interest in his employment because Sec. 114-528 states that "[n]o employee shall be dismissed from employment … except for cause." *See* Compl. ¶ 355.  Because he has a property interest, Cochran "is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).[3]  "There must be 'some kind of hearing' before termination of an employee with a protected property interest." *Harrison*, 132 F.3d at 684.

---

[3] *Loudermill* makes clear that due process requires both "a pretermination opportunity to respond, coupled with post-termination administrative procedures."  470 U.S. at 547-48.  While the Eleventh Circuit has held that there is no deprivation of *post-termination* due process where the deprivation can be remedied in state court, *McKinney v. Pate*, 20 F.3d 1550, 1563 (11th Cir. 1994), the Court still demands the government comply with the *pre-termination* procedures that *Loudermill* requires.  *See Harrison v. Willie,* 132 F.3d 679, 683–84 (11th Cir.1998) (inquiring whether plaintiff received a pre-termination hearing); *McCoy v. Alabama Dep't of Corr.,* 427 F. App'x 739, 741 (11th Cir.2011) (same); *Ogburia v. Cleveland,* 380 F. App'x 927, 929–30 (11th Cir.2010) (same).

Here, Cochran's claim is based upon Defendants' failure to afford him the pre-termination due process required by *Loudermill* and Sec. 114-530, which mirrors *Loudermill*'s due process requirements. Cochran did not receive notice of the charges at least 10 working days prior to his suspension, a detailed explanation of the basis for his suspension or termination, or an opportunity to respond. Compl. ¶¶ 358-60. These sworn allegations establish a cause of action for deprivation of Cochran's due process rights.

## X. Defendant Reed Is Not Entitled to Qualified Immunity.

Defendant Reed violated Cochran's clearly established rights when he terminated him for publishing a book on a matter of public concern expressing Cochran's (and his Church's) biblically-based beliefs. "To demonstrate that the law is clearly established, a party is not required to cite cases with materially similar facts." *Akins*, 420 F.3d at 1305. "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).[4] Moreover, contrary to Defendants' contention, qualified immunity applies only to damage claims, not injunctive relief. *Fortner v. Thomas*, 983 F.2d 1024, 1029 (11th Cir. 1993).

Here, all of Cochran's claims are founded upon clearly established rights that have been vindicated by the Supreme Court or Eleventh Circuit. In *Cook*, for example, the Eleventh Circuit explained that "[t]he law is clearly

---

[4] Defendants cite *Wood v. City of Lakeland,* 203 F.3d 1288, 1291–92 (11th Cir. 2000), as the basis for a much narrower definition of "clearly established." But as the Eleventh Circuit explained in *Holloman v. Harland*, 370 F.3d 1252, 1278 (11th Cir. 2004), the Supreme Court's decision in "*Hope* seems to have abrogated many of the other standards articulated in *Wood*."

established that a public employer may not retaliate against an employee for an employee's exercise of constitutionally protected speech," infringe their "First Amendment right to engage in associative activity," or "engage in viewpoint discrimination." 414 F.3d at 1313, 1318. It thus denied qualified immunity to government officials who retaliated against an employee for discussing issues of public concern and seeking to distribute literature on those matters at work when there was no evidence that the speech caused a disruption or resulted in employee neglect of job duties.

In *National Treasury Employees Union*, the Supreme Court held that a government employee cannot be prohibited from publishing and distributing written works for compensation. 513 U.S. at 468-69.

And in *Loudermill*, the Supreme Court put government employers on notice that, at a minimum, they must provide all employees with a notice of allegations and opportunity to respond before termination. 470 U.S. at 546. Defendants know this, for these standards are incorporated into Sec. 114-530.

These cases, and the others cited above, provided Defendant Reed with fair warning that terminating Cochran for publishing a book on his own time that expressed Cochran's religious beliefs and that did not result in any disruption to the functioning or discipline of the Atlanta Fire Department violated Cochran's clearly established constitutional rights.

## CONCLUSION

Defendants' Motion to Dismiss should be denied.

## TYPESET CERTIFICATION

Undersigned counsel hereby certifies, pursuant to Local Rules 5.1C and 7.1D, that this document was prepared in Century Schoolbook 13-point font.

Respectfully submitted this 8th day of April, 2015,

By: /s/David A Cortman

JONATHAN D. CRUMLY, SR.
Georgia Bar No. 199466
**MANER CRUMLY CHAMBLISS LLP**
2900 Paces Ferry Road
Suite B-101
Atlanta, GA 30339
(770) 434-0310
(404) 549-4666 (facsimile)
Jcrumly@Manercc.com

Garland R. Hunt
Georgia Bar No. 378510
**HUNT & ASSOCIATES**
12110 Helleri Hollow
Alpharetta, GA 30005
(770) 294-0751
(770) 777-5847 (facsimile)
garlandhunt1@gmail.com

DAVID A. CORTMAN
Georgia Bar No. 188810
J. MATTHEW SHARP
Georgia Bar No. 607842
RORY T. GRAY
Georgia Bar No. 880715
**ALLIANCE DEFENDING FREEDOM**
1000 Hurricane Shoals Road, NE
Suite D-1100
Lawrenceville, GA 30043
(770) 339-0774
(770) 339-6744 (facsimile)
dcortman@alliancedefendingfreedom.org
msharp@alliancedefendingfreedom.org
rgray@alliancedefendingfreedom.org

KEVIN H. THERIOT
Georgia Bar No. 373095
JEREMY D. TEDESCO*
Arizona Bar No. 023497
JONATHAN A. SCRUGGS*
Arizona Bar No. 030505
**ALLIANCE DEFENDING FREEDOM**
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020
(480) 444-0028 Fax
ktheriot@alliancedefendingfreedom.org

*pro hac vice* admission

jtedesco@alliancedefendingfreedom.org
jscruggs@alliancedefendingfreedom.org

ATTORNEYS FOR PLAINTIFF

# CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of April, 2015, a copy of the foregoing document was filed with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Robert N. Godfrey
Georgia Bar No. 298550
Y. Soo Jo
Georgia Bar no. 385817
City of Atlanta Law Department
55 Trinity Avenue, S.W. Suite 5000
Atlanta, GA 30303
404-546-4100
404-739-4888 (facsimile)
rgodfrey@atlantaga.gov
ysjo@atlantaga.gov

*Attorneys for Defendants*

Gregory R. Nevins
Georgia Bar No. 539529
Lambda Legal Defense & Educ. Fund, Inc
730 Peachtree Street N.E., Suite 1070
Atlanta, GA 30308
404-897-1880
404-897-1884 (facsimile)

*Attorneys for Amicus Curiae*

/s/David A Cortman
David A. Cortman
*Attorney for Plaintiff*